

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2005

# Kanchaveli v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1134

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kanchaveli v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1036.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1036

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1134

LEVAN KANCHAVELI,

Petitioner

v.

*ALBERTO R. GONZALES, Attorney General
of the United States; U.S.
IMMIGRATION & CUSTOMS ENFORCEMENT,

Respondents

* Substituted pursuant to Rule 43c, F.R.A.P.

On Appeal from an Order entered by
The Board of Immigration Appeals
(No. A 96-021-869)

Argued April 4, 2005

Before: BARRY, AMBRO and COWEN, <u>Circuit Judges</u>

(Filed    June 10, 2005  )

Ian Bratlie, Esquire (Argued)
Pennsylvania Immigration Resource Center
50 Mount Zion Road
York, PA   17402

      Counsel for Petitioner

Peter D. Keisler
   Assistant Attorney General
   Civil Division
Linda S. Wendtland
   Assistant Director
Douglas E. Ginsburg, Esquire
John M. McAdams, Jr., Esquire
Edward C. Durant, Esquire
Stacy S. Paddack, Esquire (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044

---

OPINION

---

AMBRO, Circuit Judge

Levan Kanchaveli petitions for review the affirmance by the Board of

Immigration Appeals ("BIA") of the decision by an Immigration Judge ("IJ") denying his

application for asylum.  Kanchaveli is a citizen of the Republic of Georgia who entered

the United States without valid entry documents on February 3, 2003.  He was charged

with being removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act

("INA") by the former Immigration and Naturalization Service ("INS")[1] and he sought

---

[1] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and the INS's functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 §§ 441, 451 & 471, 116 Stat. 2135.

2

relief in the form of asylum.[2] The IJ denied Kanchaveli's asylum claim in an oral decision. He appealed to the BIA, which affirmed without opinion the IJ's decision. The petition for review to our Court followed. We have jurisdiction to review Kanchaveli's petition for review under INA § 242, 8 U.S.C. § 1252. Where, as here, the BIA summarily affirms the IJ's decision, we review the IJ's decision. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (*en banc*).

Kanchaveli raises for review whether substantial evidence supports the IJ's determination that he was neither persecuted nor had a well-founded fear of persecution on account of (1) imputed political opinion or (2) membership in a social group.[3] While Kanchaveli failed to put forward enough evidence to compel us to overturn the IJ's decision that he was not persecuted for imputed political opinion, the IJ did not address Kanchaveli's claim of persecution on account of membership in a social group. Because we believe substantial evidence supports this claim and it was not dealt with in the IJ's decision, we grant the petition for review and remand for further proceedings.

---

[2] Kanchaveli also applied for withholding of removal and relief under the Convention Against Torture (United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231)). However, these claims were not raised before the BIA nor on appeal to this Court and are deemed waived.

[3] We conclude that Kanchaveli preserved his claim of persecution on account of membership in a social group because it was in his asylum application, in his brief to the IJ, in his testimony at trial before the IJ, in his brief to the BIA, and in his brief to this Court.

## Factual History

The following pertinent facts were before the IJ in Kanchaveli's asylum application, his affidavit, his brief to the IJ, and/or his hearing testimony. Kanchaveli's father was a member of a Georgian Nationalist Party called the Round Table Free Georgia ("RTFG") and a supporter of former Georgian President Zviad Gamsakhurdia. After coming to power in 1992, Edward Shevardnadze's government targeted members of the RTFG and Kanchaveli's father escaped to Russia in 1995 to avoid arrest.

Kanchaveli remained in Tbilisi, Georgia with his mother and two brothers. On three separate occasions in 1995, the police broke into their home in search of Kanchaveli's father. The police threatened to imprison the family and warned Kanchaveli to alert them when his father returned from hiding or he and his family would be declared "people's enemies." After these incidents, the family moved to the city of Kacheti, about 300 miles from Tbilisi.

In 1998, Kanchaveli's two brothers stayed at the family home in Tbilisi awaiting approval stamps that would complete the processing of their military service. The police came to the house several times, beat the brothers, and questioned them about their father (including his involvement in the RTFG) and their own views and involvement in that organization.

Kanchaveli finished his mandatory military service in 1999 and also stayed at the family home in Tbilisi while awaiting approval stamps for completion of his service.

Like his brothers, Kanchaveli was harassed by the police. On three separate occasions in 1999, he was taken to the police station where he was beaten and interrogated about his father's whereabouts and activities. Once Kanchaveli was able to leave Tbilisi, he did so and hid with relatives.

After Kanchaveli's father returned to Georgia in 2000 and was arrested, the police nonetheless continued to harass the family. When Kanchaveli returned to Tbilisi in 2002, he believed the police would no longer be interested in him. But, shortly after his return, the police accosted him on his way to work and forcibly took him to the police station where they beat him. They asked him about the whereabouts of his other family members and whether they were involved in the RTFG. The police threatened to arrest him just like his father, kill him, or kill his family if he did not pay a bribe of $500. The beating and extortion by the police happened two more times, and on all three occasions Kanchaveli capitulated and gave them money. After the last extortion incident, Kanchaveli fled Georgia for the United States.

**Discussion**

The Attorney General has the discretion to grant asylum to an alien who is a "refugee" under § 208(b) of the INA, 8 U.S.C. § 1158(b). An individual qualifies as a refugee if s/he is "unable or unwilling" to return to his/her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8

5

U.S.C. § 1101(a)(42)(A). An applicant bears the burden of proving eligibility for asylum based on specific facts and credible testimony. *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001); 8 C.F.R. § 208.13(a).

To prove past persecution in an asylum application, the alien must show that s/he suffered harm that rose to the level of persecution, that the persecution was on account of one of the protected grounds in the statute, and that the persecution was committed by the government or forces the government is unable or unwilling to control. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d. Cir. 2003); *In re Acosta*, 19 I. & N. Dec. 211 (BIA 1985), *overruled in part as stated in In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). Our Court has adopted the BIA's interpretation of persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 n.10 (3d Cir. 1993). An alien who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1).

In order to demonstrate a well-founded fear of future persecution, an applicant must satisfy three requirements: (1) s/he has a fear of persecution in her/his native country; (2) there is a reasonable possibility that s/he will be persecuted upon return to that country; and (3) s/he is unwilling to return to that country as a result of her/his fear. 8 C.F.R. § 208.13(b)(2)(i). The alien must have a subjectively genuine fear of persecution and provide some objective, credible evidence, direct or circumstantial, that

6

his/her fear is reasonable. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). For an asylum claim, persecution does not have to be more likely than not. Indeed, even a ten percent chance of persecution can support a well-founded fear. *Cardoza-Fonseca*, 480 U.S. at 431. However, a well-founded fear of persecution must still be shown to have a nexus with one of the grounds protected in the statute. *Lukwago v. INS*, 329 F.3d 157, 174 (3d Cir. 2003).

An asylum applicant does not have to show that the persecution was motivated solely on account of one of the protected grounds. *Chang v. INS*, 119 F.3d 1055 (3d Cir. 1997); *In Re S-P-*, 21 I. & N. Dec. 486, 489 (BIA 1996). All that is required is evidence that the persecutor's actions were motivated *in part* by an actual or imputed ground. *In Re S-P-*, 21 I. & N. Dec. at 489; *In re Fuentes*, 19 I. & N. Dec. 658, 662 (BIA 1988).

In *Fatin v. INS*, 12 F.3d at 1239, our Court adopted the BIA's definition of a "social group" from *In re Acosta*: "[A] group of persons all of whom share a common, immutable characteristic." 19 I. & N. Dec. 211, 233 (BIA 1985). This characteristic "might be an innate one such as sex, color, or kinship ties." *Fatin*, 12 F.3d at 1239. The immutable characteristic must, however, be one that the members cannot or should not have to change because it is fundamental to their identity. *Id.*

*Fatin* outlines three requirements an alien must meet in order to show persecution on account of membership in a social group: (1) identifying the social group within the meaning of the INA, (2) establishing membership in that group, and (3) proving a nexus

7

between membership in the group and the persecution. *Id.*

The Ninth Circuit Court of Appeals has held that immediate family is "[p]erhaps a prototypical example of a 'particular social group'." *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986). The First, Fourth, and Seventh Circuits have also recognized that family can be a social group within the INA. *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."); *Lopez-Soto v. Ashcroft*, 383 F.3d 228, 235 (4th Cir. 2004) ("We join our sister circuits in holding that 'family' constitutes a 'particular social group' under 8 U.S.C. §1101(a)(42)[A]."); *Iliev v. INS*, 127 F.3d 638, 642 (7th Cir. 1997) ("a family constitutes a cognizable 'particular social group' within the meaning of the law.").

We uphold factual findings in an immigration matter if they are "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We reverse a determination of the BIA/IJ only if "the evidence not only supports [a contrary] conclusion, but compels it." *Id.* at 481 n.1 (emphasis omitted).

The IJ determined that Kanchaveli was credible. However, the IJ gave no analysis of whether the harm Kanchaveli suffered was on account of his membership in a social group—his family. The IJ concluded that the motives of the police toward Kanchaveli were either to locate his father or to extort money from him, and that the consequences of

8

police corruption do not equate to persecution. Contrary to the IJ's conclusion, the record indicates the police did question Kanchaveli about his father and other family members and their involvement in the RTFG during the extortion incidents. Regardless, the IJ did not consider whether the police were motivated in part by Kanchaveli's status as a member of his family.[4]

Kanchaveli's claim of past persecution and well-founded fear of persecution on account of his family membership is plausible because the evidence presented made it clear that he and his family were being targeted because of his father. In fact, the IJ concluded that there was no other apparent reason for the police to target the Kanchaveli family other than his father's past political activities. As a person's family can be a social group that is statutorily protected, the fact that the police targeted Kanchaveli and his family because of his father's opposition to the current political regime in Georgia is the nexus between the persecution and the membership in the social group.

In a similar case from the First Circuit Court of Appeals, *Gebremichael v. INS*, 10 F.3d at 36, the Court held that Gebremichael was statutorily eligible for asylum based on his nuclear family relationship. The Government argued that Gebremichael was

---

[4] The IJ did determine that the police were looking for Kanchaveli's father as a result of his past political activities. However, the IJ concluded that Kanchaveli had provided no evidence of past persecution because the "terroristic tactics" of the police were not motivated by any political opinion imputed to Kanchaveli or his family. On this claim, Kanchaveli did not provide sufficient evidence that the Georgian police actually thought that he had the same political views as his father and persecuted him because of it. Thus, we cannot grant the petition for review on this ground.

9

persecuted by the Ethiopian government to force him to reveal the whereabouts of his brother, but that this was not the same as persecution on account of membership in a social group. *Id.* at 32-33. The First Circuit rejected this argument, saying that the link between the family membership and the persecution was manifest. *Id.* at 36. "[T]he Ethiopian security forces applied to [Gebremichael] the 'time honored theory of . . . look for the family,' the terrorization of one family member to extract information about the location of another family member." *Id.* The Court held that no reasonable fact finder could fail to conclude that Gebremichael was mistreated because of his familial relationship; thus this was a clear case of past persecution on account of membership in a particular social group. *Id.*

Here the link between the persecution of Kanchaveli and his relationship to his father is self-evident. The Georgian police were employing the same tactics as the Ethiopian forces, taking action against Kanchaveli and his family in order to get to his father. Once Kanchaveli's father was arrested, the police continued to take Kanchaveli into custody, making plausible that the motive of the police all along was to target his family. The IJ merely stated that there was no evidence that Kanchaveli has a well-founded fear of persecution because there is no political motive the police would have to persecute him. This speculation (and there is nothing else to term it) misses the issue of whether Kanchaveli demonstrated the elements of a well-founded fear of persecution based on his family status.

10

We recognize that the decision whether to grant asylum lies within the discretion of the Attorney General and that the Supreme Court has instructed that appellate courts should, upon reversing an agency decision, remand the matter to the agency except in rare circumstances. *INS v. Ventura*, 537 U.S. 12, 16 (2002) (*per curiam*). Because there is substantial evidence in the record to support Kanchaveli's claim for asylum based on membership in a social group and there is no discussion of this claim in the IJ's decision, we grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.